# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINE DREW, a/k/a<br>DREW HAKIM AL-AKH AKHBAR,<br><br>   Plaintiff,<br><br>   v.<br><br>JOHN R. WALTON, Warden, et al.,<br><br>   Defendants. | Civil Action No. 2: 18-cv-1452<br><br>Chief United States Magistrate Judge<br>Cynthia Reed Eddy |

## MEMORANDUM OPINION[1]

Presently pending before the Court for disposition is Defendants' Motion for Summary Judgment, with brief in support (ECF Nos. 66 and 67). Plaintiff has filed a response in opposition (ECF Nos. 70 and 72). The issues have been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 71 and 76). Plaintiff has also submitted the Declarations from a number of practicing Muslim prisoners incarcerated at Westmoreland County Prison. (ECF Nos. 1-8, 1-9, 6, 63, 64, and 65). For the reasons that follow, the motion will be denied in part and granted in part.

**I. Background**

Plaintiff, Antoine Drew, a/k/a Drew Hakim Al-Akh Akhbar, is a practicing Muslim, the sincerity of which has not been challenged. He filed this case while he was incarcerated at Westmoreland County Prison. The Complaint was signed and dated by Plaintiff on October 26, 2018, one day after he had been sentenced in the Court of Common Pleas of Westmoreland

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. See ECF Nos. 32 and 38.

1

County at Criminal No. CP-63-CR-0001665-2018.[2]  The events giving rise to this lawsuit, however, began on September 23, 2018, while Plaintiff was a pretrial detainee.

Plaintiff's claims are brought under (i) 42 U.S.C. § 1983 for the violation of his rights under the First Amendment (Count I, right to freely exercise his religion, and Count III, retaliation for engaging in protected activity), and the Fourteenth Amendment (Count IV, Equal Protection) and (ii) the Religious Land Use and Institutionalized Person Act ("RLUIPA") (Count II) against the following eight defendants:  Warden John Walton, Deputy Wardens Lowther and Schwartz, Sgt. Gelet, Lt. Wolfe, C/Os Ashley and Conklin, and Chaplain James Badamo.

For purposes of this Memorandum Opinion, the facts are quite simple.  Plaintiff alleges that in May of 2018, he was granted permission to offer Salah in the gym or day room.  From approximately May 9, 2018 until September 23, 2018, he engaged in "authorized individual and/or group spiritual exercise in Salah in the A-wing gym or day room" while two correctional officers were present.  In August of 2018, Plaintiff filed a lawsuit in this Court (Civil Action No. 2:18-cv-1118) alleging that various constitutional violations had occurred in Westmoreland County Prison during the Muslim holy month of Ramadan from May 16, 2018 through June 14, 2018.

Plaintiff alleges that after he filed his case at Civil Action No. 2:18-cv-1118, Defendants engaged in a number of retaliatory actions.[3]  For example, he and "and/or Muslims" were

---

[2]   A review of the public docket reflects that Mr. Drew entered a negotiated guilty plea on October 25, 2018, to charges of terroristic threats and simple assault and was sentenced to a term of imprisonment of 11-1/2 to 23 months. *See* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-65-CR-0001665-2018.

[3]   Five of the eight defendants named in the instant lawsuit are named defendants in Civil Action No. 2:18-cv-1118.

banned from offering individual and/or group Salah in the gym or day room, while other similarly situated incarcerated individuals continued to utilize the gym to pray; he was told he must offer Salah in his cell, although Islam forbids Salah near toilets, and he was threatened with discipline and cell restriction if he failed to comply; Christian inmates were provided with Bibles and Bible study and Worship Services, yet Muslim inmates were not provided with Qur'an study, the Ju'muah (Friday) prayer, or an opportunity to offer Salah.

The Complaint also states that on approximately October 17, 2018, Plaintiff was asked by C/O Palmer, who is not a defendant, "Why you guys don't pray in the gym anymore?" When Plaintiff responded, "are we allowed to," C/O Palmer responded, "Of course, why wouldn't you." Complaint at ¶ 42. Plaintiff also avers that on or about October 11, 2018, C/O Blehart allowed inmate Yahya (John) Thomas to offer Salah in the A-Wing day room. *Id. See also* Declaration of Yahya Thomas (ECF No. 1-8) ("On or about Oct. 11, 2018, as I was preparing to offer Salah, C/O Blehart told me it was fine if I offered Salah in the day room and I did, although Muslims had allegedly been banned from offering group or individual Salah.").

After discovery closed, Defendants filed the instant motion for summary judgment. The motion is fully briefed and ripe for disposition by the Court.

**II.     Standard of Review**

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S at 247-48.  An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *See id*.  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; Huston, 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants. Where a party is representing himself *pro se*, the complaint is to be construed liberally. A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson,* 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded.  *Jones v. UPS*, 214 F.3d

402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

**III.   Discussion**

   A.   Prison Litigation Reform Act ("PLRA")

Defendants argue that Plaintiff's claims brought under 42 U.S.C. § 1983 are barred by Plaintiff's failure to exhaust his administrative remedies and any claim for damages is barred by 42 U.S.C. § 1997e(e). These arguments will be addressed in turn.

   1.   *Exhaustion*

Having identified the claims at issue and factual basis for those claims, the Court now turns to the threshold question of whether Plaintiff has exhausted his administrative remedies in accordance with the mandate of the PLRA. *See Downey v. Pennsylvania Dep't of Corrections,* 968 F.3d 299, 304 (3d Cir. 2020) (stating that "[e]xhaustion is a threshold requirement that district courts must consider."). *See also Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The PLRA provides that " [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirement that a prisoner exhaust administrative remedies applies to all prisoner lawsuits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle,* 534 U.S. 516 (2002). Because Plaintiff was a prisoner when he brought this lawsuit, the administrative exhaustion requirements of the PLRA apply. *Garrett v. Wexford*, 938 F.3d 69 (3d Cir. 2019).

Defendants argue that Plaintiff's claims are barred procedurally by the PLRA because Plaintiff failed to exhaust all administrative remedies available to him. Plaintiff responds that the prison officials interfered with his ability to utilize the grievance system, thereby resulting in administrative remedies not being available to him.

The United States Court of Appeals for the Third Circuit, in a recent unpublished opinion, reiterated the analytical structure for a failure-to-exhaust affirmative defense:

> As formulated in this Circuit, the failure-to-exhaust affirmative defense has two distinct stages. The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (explaining that the prison's grievance policy supplies " 'the yardstick' for determining what steps are required for exhaustion" (quoting *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir. 2004))); *see also Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her.[1] *See Rinaldi*, 904 F.3d at 268.
>
> [1] This order of evaluation is not absolute, and it is permissible to consider the second stage first, *see, e.g., Small,* 728 F.3d at 271-72, but this ordering is consistent with the prison-employee defendants bearing the burden of production at the first stage, before the inmate plaintiff inherits the burden at the second.
>
> The state of facts dictates the appropriate legal standard for evaluating the exhaustion defense. If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment. If there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate . . . .

*West v. Emig,* 787 F. App'x 812, 814 (3d Cir. 2019) (non-precedential). Here, because Defendants have moved for summary judgment, the analysis turns on whether any genuine issue of material fact exists and whether Defendants are entitled to judgment as a matter of law.

The exhaustion requirement is mandatory and a prisoner is required to pursue all avenues of relief available to him within the prison's grievance system before bringing a federal

civil rights action. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). Prisoners who fail to fully exhaust administrative remedies may not subsequently litigate those claims in federal court. *Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir. 2000).

Moreover, the PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance / appeal system and a procedurally defective administrative grievance or appeal precludes action in federal court. *Fennell v. Cambria County Prison*, 607 F. App'x 145, 149 (3d Cir. 2015) (citing *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91 (2006) and *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2008)).

The broad rule favoring full exhaustion allows for a narrowly defined exception, an exception with potential application here: administrative remedies must be available to the prisoner. *Ross v. Blake*, -- U.S. --, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."); *Downey*, 968 F.3d at 305 ( "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation'." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (internal quotation marks omitted)).

In this case, Plaintiff's claims are governed by the grievance procedure outlined in the Westmoreland County Inmate Handbook and a copy of that procedure is attached to Plaintiff's Complaint, as Exhibit A (ECF No. 4-1). According to this procedure, "[p]rior to filing a grievance, the inmate must attempt to have his complaint resolved by making a written

7

complaint through the normal chain of command . . . ." Inmate grievance forms "will be provided by the Deputy Warden of Security, **once** the chain of command procedure has been exhausted." *Id*. (emphasis in original).

Attached to Plaintiff's Complaint are two "Prison Inmate Request Slips," both dated September 23, 2018, in which Plaintiff reported that he had been informed that he cannot pray in the gym and requested a grievance slip. *See* ECF No. 4, Exhibits C and D. In his response to Defendants' motion for summary judgment, Plaintiff argues that the administrative process was unavailable as Defendants never provided him a grievance form, despite his requests for one. Defendants have produced no evidence to counter Plaintiff's position.

Based on the uncontested summary judgment record, the Court finds that the administrative process was not available to Plaintiff and, as such, his failure to exhaust his administrative procedures is excused.

2.   *Limitations of Recovery*

Section 1997e(e) of the PLRA, entitled, "Limitation on recovery," provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." In order to satisfy § 1997e(e)'s physical injury requirement, a plaintiff must demonstrate a less than significant but more than de minimis physical injury. *Mitchell v. Horn*, 318 F.3d 525, 533 (3d Cir. 2003).

Circuit courts have split over the applicability of Section 1997e(e) to claims involving constitutional violations but no physical injury. A majority, including the Court of Appeals for the Third Circuit, has held that Section 1997e(e) precludes compensatory damages for any claim

that does not include physical harm. In *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2002), a case in which the plaintiff sought redress for the harm he suffered as a result of defendants' alleged violation of his First Amendment right to free exercise of religion, our appellate court concluded that "the only actual injury that could form the basis for the award [plaintiff] seeks would be mental and/or emotional" and thus barred the plaintiff's claim for compensatory damages. Following the decision in *Allah,* this Court determines that Plaintiff's claims for compensatory damages are barred.

However, this determination does not mean that § 1997e(e) bars all of Plaintiff's claims for damages. As our Court of Appeals explained in *Allah*, "the Supreme Court recognized in both [*Carey v. Piphus,* 435 U.S. 247, 266 (1978)] and *[Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299 308 n.11 (1986)] that certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages." *Id*. at 251. Although in this case Plaintiff does not expressly seek nominal damages in his complaint "it is not necessary to allege nominal damages." *Id*. (citing *Basista v. Weir*, 340 F.3d 74, 87 (3d Cir. 1965)). Further, "[p]unitive damages may also be awarded based solely on a constitutional violation, provided the proper showing is made." *Id*.

In sum, the Court finds that Plaintiff's claims for compensatory damages are barred by § 1997e(e) but that his claims for nominal damages are not barred by that provision. Further, to the extent that Plaintiff's claims for punitive damages are premised on the alleged violation of his constitutional rights rather than on any emotional or mental distress suffered as a result of the violation, and a proper showing is made, those claims also are not barred.

The Court will now turn to the merits of the summary judgment motion.

B.    Claims Brought Under 42 U.S.C. § 1983

Title 42, United States Code, section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

There is no dispute that Warden John Walton, Deputy Wardens Lowther and Schwartz, Sgt. Gelet, Lt. Wolfe, and C/Os Ashley and Conklin are state actors. Defendants, however, dispute that Defendant Badamo, the prison chaplain, is a state actor. Thus, at the outset, it must be determined whether Defendant Badamo, the Chaplain for the Westmoreland County Prison, could be considered a state actor.

1. *Defendant James Badamo, Chaplain*

The Court of Appeals for the Third Circuit has not determined whether or when a prison chaplain may be considered a state actor. Other courts addressing the question have reached contrary outcomes. *Compare Florer v. Congregation Pidyon Shevuyin*, 639 F.3d 916, 924-25 (9th Cir. 2011) (finding defendants were not state actions, explaining, *inter alia*, that "[c]haplains and religious leaders do not automatically become state actors when they provide opinions on matters of dogma in response to inquiries from prison officials"), and *Montono v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997) ("a prison chaplain, even if a full-time state employee, is not a state actor when he engages in inherently ecclesiastic functions"), with *Stubbs v. DeRose*, No. 03-2362, 2007 WL 776789, at *5 (M.D. Pa. March 12, 2007) (finding on a motion for summary judgment that the defendant, a full-time prison chaplain, was a state actor, where, *inter alia*, "his day-to-day activities were supervised by [the warden and deputy

10

warden at the prison] where he worked full time, maintained an office, and was permitted to be present in areas of the prison that would be off-limits to members of the public").

Defendants, relying solely on the holding in *Florer*, argue that Defendant Badamo is not a state actor as he was contracted to provide religious consultations to the prison population and there is "no evidence that the prison delegated to Defendant Badamo the obligation to provide reasonable opportunities to exercise religious freedom." Br. at 7 (ECF No. 67). In support of their position, Defendants rely on the Employment Agreement between the County of Westmoreland and Chaplain James Badamo. (ECF No. 66-1). Plaintiff responds that Defendant Badamo, not only provided religious consultations, but also handled requests in the grievance process and all questions on religious practices were referred to him.

As reflected by the Agreement, the County of Westmoreland contracted with Chaplain Badamo to provide chaplaincy services for the inmate population housed at Westmoreland County Prison for a period of one year commencing March 1, 2018 through February 28, 2019. Chaplain Badamo was to work an average of 20 hours per week and many of his responsibilities were supervised by the Warden and Deputy Wardens of Westmoreland County Prison. For example, "[u]pon request of the Warden, [he] will provide supervision of faith activities of inmates observing other faith traditions," he was "responsible to the Warden and Deputy Wardens of the Westmoreland County Prison and shall coordinate all services through them," he was to "work in conjunction with the Warden and Deputy Wardens to plan approved religious observances and feasts," and he was to "maintain records of inmates' participation in services, religious classes and religious counseling." He was permitted to be present in areas of the prison that would be off-limits to members of the public, such as the prison infirmary, restricted units, and the general population units. And he was "responsible for overseeing any

11

volunteers who conduct religious services or classes at the Westmoreland County Prison." Agreement, ECF No. 66, Exh. A, ¶¶ 3, 4, 6, 7, 8, and 12.

Prisoners do not entirely forfeit all constitutional guarantees by reason of their conviction and confinement. *Bell v. Wolfish*, 41 U.S. 520, 545 (1979). The United States Supreme Court has recognized that prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). In an attempt to afford prisoners the guarantees under the First Amendment, in this case, the County of Westmoreland contracted with Chaplain Badamo to provide religious services to prisoners, thereby delegating to him the responsibility to provide religious services to inmates and in doing so, granted him broad access to the inmates when providing such services. Based on the summary judgment record evidence, the Court has no hesitancy in finding that Defendant Badamo should be considered a state actor in this case.

2. *Individual v. Official Capacities*

Defendants argue that Plaintiff has named the defendants only in their individual capacities. In support of their argument, Defendants rely on the plain language of the Complaint which specifically states, "Defendants Sued in their Individual Capacity." Complaint at 2. Plaintiff seeks to overcome the distinction between official- and personal-capacity suits by arguing that in the caption and throughout the Complaint he used each individual's job title.

The Supreme Court of the United States has emphasized that the distinction between official capacity suits and individual capacity suits is not a mere pleading device. *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991). Instead, to state official capacity claims, a plaintiff must assert that an official policy or custom was the moving force of a constitutional violation. *See*

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff has not alleged that an official policy or custom was the moving force of a constitutional violation. The Court, therefore, concludes that because Plaintiff has failed to assert a specific policy or custom, and fails to assert that such policy or custom was the moving force behind constitutional violations, he has failed to state official capacity claims against Defendants.

3. *Claims Brought Under the First and Fourteenth Amendments (Counts I, III, and IV)*

Plaintiff alleges that Defendants' actions (i) infringed on his First Amendment right to free exercise of religion (Count I), (ii) were taken in retaliation for him engaging in protected activity in violation of the First Amendment (Count III), and (iii) were in violation of the Equal Protection Clause of the Fourteenth Amendment as he was banned from offering individual and/or group Salah, while similarly situated Christian inmates were allowed to offer prayer in the day room and gym (Count IV). The version of events offered by Defendants differs dramatically from the version offered by Plaintiff, the non-movant. In short, the fundamental question of why Plaintiff was banned from offering Salah in the gym and day room is a hotly disputed factual matter. These contrasting facts indicate that summary judgment should not be granted.

4. *Qualified Immunity*

Defendants also argue that they are entitled to summary judgment based upon a defense of qualified immunity as the evidence demonstrates that "there is no violation of a clearly established constitutional right." The Court of Appeals for the Third Circuit has instructed that:

> Qualified immunity has two prongs. "First, a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (alteration in original) (quoting *Pearson [v. Callahan*, 555 U.S. 223, 232

13

(2009)]. "And second, the court must determine 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Id.*

*James v. New Jersey State Police*, 957 F.3d 165, 168 (3d Cir. 2020). A court may begin its analysis with either prong. *Id.*

Based upon the facts presented here and the analysis set forth above, the Court finds that Defendants have failed to satisfy both prongs. A jury could find that Defendants' violated Plaintiff's constitutional rights. Assuming that Plaintiff's constitutional rights were violated, a jury could also find that Defendants could not reasonably have believed that their conduct was lawful. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violated the law.'" *Id*. at 174. Therefore, summary judgment based upon a defense of qualified immunity will be denied.

    C.    The Religious Land Use and Institutionalized Person Act ("RLUIPA") (Count II)

"Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007). Section 3 of RLUPA governs religious exercise by institutionalized persons and provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, "[a] prisoner-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington*, 497 F.3d at 277-78 (emphasis added). RLUIPA does not permit actions against employees in their individual capacities and does not allow for the recovery of money damages. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

Because Plaintiff has not asserted that a policy or official practice burdened the practice of his religion and because RLUIPA does not permit actions against employees in their individual capacities, Defendants are entitled to judgment in their favor on Plaintiff's RLUIPA claim.

### IV. Conclusion

For all these reasons, Defendants' motion for summary judgment will be denied in part and granted in part. Summary Judgment will be granted to Defendants on Plaintiff's claims brought under RLUIPA (Count II). Summary judgment will be denied on Plaintiff's claims brought under 42 U.S.C. § 1983 (Counts I, III, and IV).

An appropriate order will be filed separately.

Dated: May 27, 2021

/s Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:  ANTOINE DREW
     2217 Harrison Avenue
     Latrobe, PA 15650
     (via U.S. First Class Mail)

     David A. Regoli, Esquire
     (via ECF electronic notification)