IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| ANTOINE DREW a/k/a<br>DREW HAKIM AL-AKHBAR,<br><br>           Plaintiff,<br><br>    v.<br><br>WARDEN JOHN WALTON, et al.,<br><br>           Defendants. | Civil Action No. 2: 18-cv-1452<br><br>Chief United States Magistrate Judge<br>Cynthia Reed Eddy |

**MEMORANDUM OPINION**

This civil action was initiated pro se in this Court on October 30, 2018, by Plaintiff Antoine Drew a/k/a Drew Hakim Al-Akhbar, who was then incarcerated at Westmoreland County Prison. For the reasons that follow, this case will be dismissed with prejudice based upon Plaintiff's failure to prosecute this action.

**Procedural Background**

On November 1, 2018, Plaintiff's motion for leave to proceed *in forma pauperis* was granted (ECF No. 3) and the Complaint filed that same day. (ECF No. 4). In lieu of filing an Answer, Defendants filed a motion to dismiss (ECF No. 28), which was denied by the Court on August 23, 2019. (ECF No. 39). Defendants thereafter filed an Answer on August 27, 2019. (ECF No. 40). The next day, the Court entered its Case Management Order and scheduled a telephonic initial case management conference. (ECF No. 41). The telephonic initial case management conference was held on October 8, 2019, and both Plaintiff and counsel for Defendants participated.

On October 22, 2019, Plaintiff notified the Court that he had been released from custody and provided a new address of record. (ECF No. 47).

1

On May 5, 2020, the Court scheduled a mid-discovery telephonic status conference for May 22, 2020, and ordered Plaintiff to provide no later than May 15, 2020, a phone number where he could be reached. As a result of Plaintiff failing to comply with that Order, the Court issued an Order to Show Cause on May 15, 2021. (ECF No. 53). In response, on May 29, 2020, Plaintiff filed a Notice of Change of Address indicating that he was in custody at Westmoreland County Prison. (ECF No. 55). The Show Cause Order was dissolved and the Court issued an order setting deadlines for the filing of motions for summary judgment. (ECF No. 57).

Defendants filed a motion for summary judgment on October 15, 2020 (ECF No. 66), to which Plaintiff responded in opposition on November 16, 2020. (ECF Nos. 70-73). While the motion was pending, Plaintiff advised the Court that he had been released from custody and provided a new address of record. (ECF No. 75). On May 27, 2021, Defendants' motion for summary judgment was granted in part and denied in part. (ECF Nos. 77 and 78).

The Court scheduled a video status conference with the parties for July 14, 2021, at 10:00 AM. (ECF No. 79). Plaintiff failed to appear at the conference. Later that day, Plaintiff called the Court and stated that he incorrectly thought the conference was scheduled July 15, 2021. The Court rescheduled the video conference for July 28, 2021. (ECF No. 81). Plaintiff and counsel for Defendants appeared at the conference. The parties indicated that they would engage in settlement discussions privately. The Court scheduled a follow-up video status conference for August 16, 2021. During this conference on August 16, 2021, the parties stated that settlement discussions had been unsuccessful. The Court then confirmed with the parties that the case was trial ready. (ECF No. 83).

On August 24, 2021, the Court entered a Pretrial Scheduling Order scheduling the case for jury trial for January 10, 2022. A copy of that Order was mailed to Plaintiff at his listed address of record and the Court has no reason to believe that Plaintiff did not receive the Order. Plaintiff was to

2

file by November 15, 2021, his list of trial witnesses and their current addresses, and a detailed statement of the testimony of which Plaintiff expects to be given by each witness. (ECF No. 84).

When Plaintiff failed to comply with the Pretrial Scheduling Order, the Court issued an Order to Show Cause. (ECF No. 86). Plaintiff was advised that failure to respond to the Show Cause Order would result in the case being dismissed for failure to prosecute. A copy of that Order was mailed to Plaintiff at his listed address of record and the Court has no reason to believe that Plaintiff did not receive the Order. To date, Plaintiff has neither complied with Pretrial Scheduling Order, responded to the Order to Show Cause, or contacted the Court.

## Discussion

A federal court has the discretion to dismiss a proceeding sua sponte based on a party's failure to prosecute the action. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962); *Qadr v. Overmyer*, 642 F. App'x 100, 102 (3d Cir. 2016) (citing Fed. R. Civ. P. 41(b)). Specifically, Plaintiff's failure to comply with Court orders constitutes a failure to prosecute this action, and therefore, this action is subject to dismissal pursuant to Federal Rule of Civil Procedure 41(b), which states in pertinent part:

> Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule C except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 C operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

A district court has the power to dismiss a case, whether the plaintiff is proceeding *pro se* or otherwise, pursuant to Fed.R.Civ.P. 41(b), for failure to comply with an order of the court. The Court of Appeals for the Sixth Circuit has commented that "while pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal

3

training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). Thus, a pro se litigant's failure to comply with a court order is not the same as "inartful pleading or [a] lack of legal training." *Id*. at 110.

The Court of Appeals for the Third Circuit has stated that "a district court dismissing a case sua sponte 'should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision'." *Qadr*, 641 F. App'x at 103 (quoting *Briscoe v. Klaus* 538 F.3d 252, 258 (3d Cir. 2008)). Before engaging in a sua sponte dismissal, "the court 'should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders.'." *Id*. (quoting *Briscoe*, 538 F.3d at 258).

Additionally, our court of appeals has established a six-factor balancing test to guide a court's analysis as to whether to dismiss a claim as a sanction:

(1) extent of the party's personal responsibility;

(2) prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a history of dilatoriness;

(4) whether the conduct of the party or the attorney was willful or in bad faith;

(5) effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(6) meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984). In weighing the *Poulis* factors, the Court must analyze the factors in light of the "strong policy favoring decisions on the merits." *Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir 2019). Our appellate court has emphasized that "dismissals with prejudice or defaults are drastic sanctions. Although a court must balance the six factors, it need not find that all factors are met before dismissing an action with

prejudice. *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992) (applying some or all of the six-part test in reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) (finding it is not necessary that all of the factors point toward a default before that sanction will be upheld). A review and assessment of the *Poulis* factors weighs heavily in favor of dismissing this action based on Plaintiff's failure to prosecute:

    1.    <u>The Extent of the Party's Personal Responsibility</u>

"[I]n determining whether dismissal is appropriate, we look to whether the party bears personal responsibility for the action or inaction which led to the dismissal." *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund,* 29 F.3d 863, 873 (3d Cir. 1994). In determining personal responsibility for the delay, the Court must distinguish "between a party's responsibility for delay and counsel's responsibility." *Hildebrand*, 923 F.3d at 133 (*citing Poulis*, 747 F.2d at 868). Any doubt as to personal responsibility should be resolved " ' in favor of reaching a decision on the merits'." *Id*. at 138 (quoting *Emerson v. Thiel Coll*., 296 F.3d 184, 190 (3d Cir. 2002)).

Here, Plaintiff is proceeding *pro se,* so the responsibility for failing to respond to the Court's Pretrial Scheduling Order and the Order to Show Cause is his alone. This factor weighs heavily in favor of dismissal.

    2.    <u>Prejudice to the Adversary</u>

Prejudice to the adversary is a substantial factor in the *Poulis* analysis, but like any other factor, it is not dispositive. *Hildebrand*, 923 F.3d at 134. This case is trial ready and scheduled for trial on January 10, 2022. Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware v.*

*Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id*. In this case, Plaintiffs' failure to litigate this case and comply with Court rules and Court orders frustrates and delays a resolution of this action, and so, such failure to litigate can be seen to prejudice the Defendants, who seek a timely resolution of this case. This factor weighs heavily in favor of dismissal.

### 3. A History of Dilatoriness

A history of dilatoriness is generally established by repeated "delay or delinquency." *Adams,* 29 F.3d at 984. While once or twice is normally insufficient, this factor weighs in favor of dismissal where the plaintiff has a history of repeated delay. *Hildebrand*, 923 F.3d at 135 (citation omitted). In addition to repeated acts, "extensive" delay can also create a history of dilatoriness. *Adams*, 29 F.3d at 874. A "failure to prosecute" does not require that plaintiff take affirmative "steps to delay the trial . . . it is quite sufficient if [he/she] does nothing . . . ." *Id.* at 875 (citation omitted).

Here, Plaintiff does not have a history of dilatoriness, but he has failed to comply with the Court's Pretrial Scheduling Order and the Order to Show Cause why this case should not be dismissed. This is sufficient evidence, in the Court's view, to indicate that Plaintiff no longer desires to proceed with this action. Thus, this factor weighs in favor of dismissal.

### 4. Whether the Party's Conduct Was Willful or In Bad Faith

In determining if Plaintiff's conduct constituted willful or bad faith, the "court should look for 'the type of willful or contumacious behavior' that can be characterized as 'flagrant bad faith,' such as [a case history of] failing to answer interrogatories for nearly a year and a half, demanding numerous extensions, ignoring admonitions by the court, and making false promises to correct delays." *Hildebrand,* 923 F.3d at 135 (citing *Scarborough*, 747 F.2d at 875 (citation omitted)). "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875. Although "[a]

lengthy delay reflects 'inexcusable negligent behavior,' id. at 876, . . . that behavior alone does not rise to the level of willfulness or bad faith." *Hildebrand*, 923 F.3d at 135.  Finally, "[b]ecause the harsh sanction of dismissal should serve to deter bad faith or self-serving behavior, and because of our policy of favoring decisions on the merits, [in the absence of evidence] that the delay was not effectuated willfully or in bad faith, [this factor] should weigh against dismissal." *Id*. at 136.

There is no indication on this record that Plaintiff's failure to respond to the Court's order was the result of any excusable neglect. Plaintiff was specifically informed that failure to respond to the Order to Show Cause would result in the case being dismissed.  In addition, Plaintiff on three separate occasions filed notices of change of addresses (ECF Nos. 47, 55, and 75), so it cannot be said that he did not know to change his address with the Court if he has relocated. Drew's silence and failure to litigate this action lead to the conclusion that he has willfully abandoned this case. Therefore, this factor weighs in favor of dismissal.

   5.   <u>Effectiveness of Alternative Sanctions</u>

A district court must thoroughly consider "alternative sanctions before dismissing a case with prejudice."  *Id*. (citing *Briscoe*, 538 F.3d at 262).  The Court should also provide an analysis of effectiveness sufficient "to honor [the] longstanding tradition of favoring decisions on the merits." *Id*.  In so doing, the court should be mindful that "[a]lternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency." *Poulis*, 747 F.2d at 866 (citations omitted). "[A]lternative sanctions need only be effective toward mitigating the prejudice caused by dilatory behavior or delinquency." *Hildebrand*, 923 F.3d at 136. They are not required to be "completely amelioriative." *Id*.

There are no alternative sanctions which would adequately punish Plaintiff for his failure to adhere to this Court's orders; imposing a monetary sanction on Plaintiff, who is proceeding *in forma pauperis*, would not be effective as he appears to be impecunious.  Moreover, Plaintiffs' failure to

prosecute this action even in the face of an Order to Show Cause leads to an inference that further orders to Plaintiff would not be effective. Therefore, the Court can see no alternative sanction that would be appropriate other than dismissal.

      6.      <u>Meritoriousness of the Claim or Defense</u>

"The standard for determining whether a plaintiff's claims are meritorious 'is moderate.' " *Adams*, 29 F.3d at 876. The standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim, and not a summary judgment standard, is applicable in a *Poulis* analysis. *Id*. at 869-70. Since some of Plaintiff's claims survived summary judgment, the Court cannot say that Drew's claims do not have legal merit. But, in the Court's view, consideration of this factor cannot save Drew's case, since he is now wholly noncompliant with his obligations as a litigant.

In summary, at least five of the six *Poulis* factors weigh heavily in favor of dismissal. The Court cannot properly control its docket, move this action forward, and properly protect the rights of all parties if Plaintiff fails to comply with orders issued by this Court. Accordingly, it is respectfully recommended that this action be dismissed with prejudice for Plaintiff's failure to prosecute.

## Conclusion

Based on the discussion above, this action will be dismissed with prejudice for failure to prosecute. An appropriate Order will follow.

Dated: December 7, 2021

                                    <u>s/ Cynthia Reed Eddy</u>
                                      Cynthia Reed Eddy
                                      Chief United States Magistrate Judge

cc:    **ANTOINE DREW**
        2217 Harrison Avenue
        Latrobe, PA 15650
        (via U.S. First Class Mail)

        All Counsel of Record
        (via ECF electronic notification)